1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                  FOR THE EASTERN DISTRICT OF CALIFORNIA

9    RANDELL L. BURTON,

10              Plaintiff,                    No. CIV S-05-2408 DAD

11       vs.

12   MICHAEL J. ASTRUE,                    ORDER
     Commissioner of Social Security,[1]
13
                Defendant.
14   _____/

15              This social security action was submitted to the court, without oral argument, for

16   ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary

17   judgment.  For the reasons explained below, the undersigned will affirm the decision of the

18   Commissioner of Social Security (Commissioner).

19                              **PROCEDURAL BACKGROUND**

20              In July 2003, plaintiff Randell L. Burton applied for Social Security Disability

21   Insurance benefits under Title II of the Social Security Act (Act).  (Transcript (Tr.) at 48-50.)

22   The Commissioner denied plaintiff's application initially and on reconsideration.  (Tr. at 33-37,

23   38, 40-45.)  On April 14, 2005, pursuant to plaintiff's request dated May 6, 2004, a hearing was

24

25          [1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.
     Mr. Astrue is substituted as defendant in this suit pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ.
26   P. 25(d)(1).

                                                1

held before an administrative law judge (ALJ), at which plaintiff was represented by counsel.

(Tr. at 47, 230-76.)  In a decision issued on July 25, 2005, the ALJ determined that plaintiff was

not disabled.  (Tr. at 10-24.)  The following findings were entered:

1.   The claimant met the disability insured status requirements of the Act on October 1, 2002, the date the claimant stated he became unable to work, and continues to meet them through the date of this decision.

2.   The claimant has not engaged in substantial gainful activity since October 1, 2002.

3.   The claimant has severe neck pain due to degenerative disc disease of the cervical spine, asthma, chronic obstructive pulmonary disease, morbid obesity, and a history of a left ankle fibular fracture.  However, he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No.4.

4.   Subjective complaints are considered credible only to the extent that they are supported by the evidence of record, as summarized in the text of this decision.

5.   The claimant has the retained residual functional capacity to perform a full range of sedentary work. He is restricted to a work environment which is well ventilated, where little or no noxious fumes or dusts are present.  (20 CFR 404.1545).

6.   The claimant is unable to perform his past relevant work as a roofer (20 CFR § 404.1520(e).

7.   The claimant is 46 years of age, which is defined as a younger individual.

8.   The claimant has a high school education.  (20 CFR 404.1563, 404.1564).

9.   In view of the claimant's age and residual functional capacity, the issue of transferability of work skills is not material.

10.  If the claimant's exertional capacity were for a full range of sedentary work activities, and there were no nonexertional impairments, in consideration of such a capacity and his age, education and work

1   experience, Guideline Rule 201.21 of the Medical-
Vocational Guidelines of 20 CFR Part 404, Subpart
2   P, Appendix 2, would direct a conclusion that the
claimant is not disabled.

3

4   11.   Considering the claimant's age, educational
background and residual functional capacity, he is
5   able to make a successful vocational adjustment to
work which exists in significant numbers in the
6   national economy.  Such work includes:  lens
assembler, approximately 27,000 in California and
7   225,000 in the United States; lens assembler [sic],
5,000 in California, and 56,000 in the United States;
8   and telephone quotation clerk, 12,000 in the State of
California, and 93,000 in the United States.

9   12.   The claimant was not under a disability, as defined
in the Social Security Act, at any time through the
10   date of this decision (20 CFR § 404.1520(g).

11   (Tr. at 23-24.)

12   Plaintiff requested review of the ALJ's decision.  (Tr. at 8.)  The Appeals Council

13   declined review on September 28, 2005.  (Tr. at 5-7.)  Plaintiff then sought judicial review

14   pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on December 2, 2005.

15   **LEGAL STANDARD**

16   The Commissioner's decision that a claimant is not disabled will be upheld if the

17   findings of fact are supported by substantial evidence in the record as a whole and the proper

18   legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973

19   (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

20   The findings of the Commissioner as to any fact, if supported by substantial evidence, are

21   conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

22   such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

23   Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson

24   v. Perales, 402 U.S. 389, 401 (1971)).

25   A reviewing court must consider the record as a whole, weighing both the

26   evidence that supports and the evidence that detracts from the ALJ's conclusion.  See Jones, 760

3

F.2d at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920.  See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  This five-step process can be summarized as follows:

Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

1                                              **APPLICATION**

2            Plaintiff advances a number of arguments in his motion for summary judgment.

3  First, plaintiff asserts that the ALJ failed to consider plaintiff's sinusitis, individually or in

4  combination with other impairments, at step two of the sequential evaluation process.  Second,

5  plaintiff contends that his asthma met or equaled the criteria under Listing 3.03.  Third, plaintiff

6  maintains that the ALJ failed to properly credit the opinions of plaintiff's treating physician.

7  Fourth, plaintiff contends that the ALJ failed to properly credit plaintiff's own testimony.  Fifth,

8  plaintiff asserts that the ALJ failed to include all of plaintiff's limitations in the hypothetical

9  question posed to the vocational expert.  The court addresses these arguments below.

10 **I.  Consideration of Plaintiff's Sinusitis as an Impairment**

11           It is well-established that at step two of the sequential evaluation process the ALJ

12 must determine if the claimant has a medically severe impairment or combination of

13 impairments.  Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S.

14 at 140-41).  The purpose of step two of the sequential evaluation is merely to identify claimants

15 whose medical impairment is so slight that it is unlikely they would be disabled even if age,

16 education, and experience were taken into account.  Yuckert, 482 U.S. at 153.  "An impairment

17 or combination of impairments can be found 'not severe' only if the evidence establishes a slight

18 abnormality that has 'no more than a minimal effect on an individual's ability to work.'"

19 Smolen, 80 F.3d at 1290 (citations omitted).  See also 20 C.F.R. §§ 404.1521(a) and 416.921(a).

20           Here, plaintiff applied for disability benefits on the ground that he was unable to

21 work because of chronic bronchitis, chronic obstructive pulmonary disease, asthma, allergies,

22 neck pain, ankle pain, hypertension, and spinal spasms.  (Tr. at 13, 53.)  Plaintiff alleged that he

23 became unable to work due to his impairments on October 2, 2002.  (Tr. at 53.)  The ALJ found

24 five severe impairments:  severe neck pain due to degenerative disc disease of the cervical spine,

25 asthma, chronic obstructive pulmonary disease, morbid obesity, and a history of left ankle fibular

26 fracture.  (Tr. at 23.)

With regard to sinusitis, which plaintiff did not mention in his application for disability benefits, the ALJ noted that plaintiff was seen in July 2002 for symptoms of shortness of breath, cough, and nasal congestion, and on July 17, 2002, "was diagnosed with asthmatic bronchitis, resolved; and acute sinusitis, resolving." (Tr. at 15 (citing Ex. 8F/28[2]).) Two and a half years later, on January 12, 2005, plaintiff was seen at a Sacramento County health clinic for nasal congestion lasting for one and a half months, and the doctor ordered an x-ray examination of plaintiff's sinuses in order to rule out sinusitis. (Tr. at 18 (citing Ex. 13F[3]; see tr. at 216.) The x-ray report dated January 18, 2005, did not rule out sinusitis, as Dr. Penman made "findings of pansinusitis with haziness and increased density over all of the visualized paranasal sinuses," but Dr. Penman found plaintiff's condition "consistent with acute and/or chronic sinusitis." (Tr. at 215.) The Sacramento County health clinic records submitted to the ALJ on April 11, 2005 in preparation for the hearing on April 14, 2005 contain only one subsequent record, a continuation sheet dated January 21, 2005, on which the only legible word is "sinusitis." (Tr. at 214.)

The medical records cited by the ALJ do not provide substantial evidence that plaintiff suffered from chronic sinusitis, and plaintiff cites no additional medical records documenting a diagnosis of chronic sinusitis. Absent such a diagnosis, it appears plaintiff suffered two episodes of acute sinusitis over a two and a half year period and that those episodes resolved.

The court has considered plaintiff's argument that his symptoms of shortness of breath, coughing, watery and itchy eyes, sneezing, nasal congestion, facial pain, headaches, and fatigue demonstrate severe sinusitis. However, plaintiff has not shown that these symptoms are caused by chronic sinusitis rather than by chronic bronchitis, chronic obstructive pulmonary disease, asthma, and allergies, all of which were found to be severe impairments from which he

---

[2] (Tr. at 184.)

[3] (Tr. at 213-29.)

suffers.  Nor has plaintiff demonstrated that two episodes of acute sinusitis in two and a half
years placed significant additional limitations on his physical or mental ability to perform basic
work activities, beyond the limitations already imposed by his severe chronic bronchitis, severe
chronic obstructive pulmonary disease, severe asthma, and severe allergies.

The court finds that the ALJ's determination at step two concerning severe
impairments is supported by the evidence in the administrative record.  The ALJ did not screen
out a severe impairment or preclude consideration of any symptom arising from plaintiff's severe
impairments.  Plaintiff's arguments to the contrary are unpersuasive.

**II.  Determining Whether Plaintiff's Asthma Met or Equaled Listing 3.03**

At step three of the sequential evaluation process, a claimant who demonstrates
that he suffers from a severe impairment that is either listed in Appendix 1 of the regulations or
equal to a listed impairment will be found disabled without regard to age, education, and work
experience.  20 C.F.R. §§ 404.1525(a) and 416.925(a).  The Listing of Impairments in Appendix
1 "describes for each of the major body systems impairments that [are] consider[ed] to be severe
enough to prevent an individual from doing any gainful activity."  20 C.F.R. §§ 404.1525(a) and
416.925(a).  However, a claimant's impairment will not be considered listed solely because the
claimant has the diagnosis of a listed impairment; the impairment must satisfy all of the medical
criteria of the listing.  20 C.F.R. §§ 404.1525(d) and 416.925(d).  See also Sullivan v. Zebley,
493 U.S. 521, 530 (1990); Marcia v. Sullivan, 900 F.2d 172, 175 (9th Cir. 1990).

An impairment not listed in Appendix 1 may be found medically equivalent to a
listed impairment "if it is at least equal in severity and duration to the criteria of any listed
impairment."  20 C.F.R. §§ 404.1526(a) and 416.926(a).  See also Tackett, 180 F.3d at 1099.  If a
claimant has multiple impairments, and no individual impairment meets or equals a listed
impairment, the Commissioner must review the findings related to all impairments to determine
whether the findings are of medical significance equal to those of a listed impairment.  Id.  See
also Marcia, 900 F.2d at 175-76; 42 U.S.C. § 423(d)(2)(B); Social Security Ruling (SSR) 83-19

7

("An impairment 'meets' a listed condition . . . only when it manifests the specific findings described in the set of medical criteria for that listed impairment.").

In the present case, plaintiff alleges that he met the criteria of Listing 3.03, "Asthma." The listing can be met in either of two ways, and plaintiff claims that the medical evidence documented that he satisfied the criteria for both of them. Listing 3.03 provides as follows:

> *Asthma.* With:
> A. Chronic asthmatic bronchitis. Evaluate under the criteria for chronic obstructive pulmonary disease in 3.02A;
> Or
> B. Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each in-patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.03. The first approach focuses on the severity of the condition, while the second focuses on the frequency of attacks.

Severity is demonstrated by testing pulmonary function. Section 3.02A requires a very specific showing of chronic pulmonary insufficiency, as follows:

> A. Chronic obstructive pulmonary disease, due to any cause, with the $FEV_1$ [forced expiratory volume] equal to or less than the values specified in table 1 corresponding to the person's height without shoes.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.02A. For a person whose height is 65 inches, as plaintiff's height was recorded for pulmonary function testing in September 2003 (tr. at 116), table 1 requires an $FEV_1$ equal to or less than 1.25. For a person whose height is 67 inches, as plaintiff's height was recorded for pulmonary function testing in March 2004 (tr. at 192), Table 1 requires an $FEV_1$ equal to or less than 1.35. Id.

Section 3.00E sets forth detailed requirements for conducting, documenting, and interpreting pulmonary function tests for purposes of § 3.04A. In particular,

1    [t]he reported one-second forced expiratory volume . . . should
     represent the largest of at least three satisfactory forced expiratory
2    maneuvers.  Two of the satisfactory spirograms should be
     reproducible for both pre-bronchodilator tests and, if indicated,
3    post-bronchodilator tests.  A value is considered reproducible if it
     does not differ from the largest value by more than 5 percent or 0.1
4    [of a liter], whichever is greater. . . .

5        Spirometry should be repeated after administration of an
     aerosolized bronchodilator under supervision of the testing
6    personnel if the pre-bronchodilator $FEV_1$ value is less than 70
     percent of the predicted normal value.

7

8    20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.00E.

9            As the ALJ noted in this case, pulmonary function testing on September 18, 2003,

10   indicated that plaintiff gave variable effort and additional testing to bring the variance down was

11   unsuccessful.  (Tr. at 16, 116-18.)  Test reproducibility was poor.  (Tr. at 118.)  Pulmonary

12   function testing administered on March 27, 2004, indicated that plaintiff gave variable effort due

13   to distress.  (Tr. at 17, 192-95.)  Again, test reproducibility was poor.  (Tr. at 192.)  It does not

14   appear that the reported results of testing in 2003 and 2004 represented the largest of at least

15   three satisfactory forced expiratory maneuvers, as required by § 3.00E, and it is clear that the test

16   results were not reproducible.  In addition, the largest of the $FEV_1$ values reported in the best test

17   summary in 2003 was the pre-bronchodilator value of 2.25, and the largest of the $FEV_1$ values

18   reported in the best test summary in 2004 was the post-bronchodilator value of 1.97.  Both of

19   those values exceeded the values specified in table 1.  The court finds that the ALJ did not err in

20   concluding that plaintiff did not meet or equal the criteria for asthma under § 3.03A.

21           Plaintiff asserts that he also met the criteria under § 3.03B.  "[T]he frequency and

22   intensity of episodes that occur despite prescribed treatment are often the major criteria for

23   determining the level of impairment" for asthma and other respiratory diseases.  20 C.F.R. Pt.

24   404, Subpt. P, App. 1, § 3.00C.  Section 3.00C sets forth the extensive documentation required

25   for such attacks, which are defined as "prolonged symptomatic episodes lasting one or more days

26   and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration

9

1   or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent

2   setting." <u>Id.</u>  Hospital admissions are defined as inpatient hospitalizations for longer than 24

3   hours.  <u>Id.</u>  The medical evidence must also include "information documenting adherence to a

4   prescribed regimen of treatment."  <u>Id.</u>

5          Plaintiff argues that he experienced eight asthma attacks between July 2, 2002 and

6   July 8, 2003 "for which he sought treatment" and eight additional asthma attacks between July

7   15, 2003 and December 24, 2004 "for which he sought treatment from his doctor."  (Pl.'s Mot.

8   for Summ. J. at 15.)  Plaintiff does not identify the alleged attacks nor does he demonstrate that

9   each one was a prolonged symptomatic episode lasting one or more days, requiring intensive

10  treatment and describing that treatment.  Although plaintiff refers generally to a six-page

11  summary of relevant medical evidence, the summary does not identify qualifying asthma attacks

12  with citation to the documentation required by § 3.00C, including the status of plaintiff's

13  adherence to any treatment regimen that had been prescribed prior to the attack.  Plaintiff has

14  failed to demonstrate that the ALJ erred in deciding that plaintiff did not meet or equal the

15  criteria for asthma under § 3.03B.

16         At step three, it is the claimant who bears the burden of proof.  <u>See</u> <u>Yuckert</u>, 482

17  U.S. at 146 n.5.  It was therefore plaintiff's burden in this case to demonstrate satisfaction of all

18  requirements of the Listings claimed.  The court finds that substantial evidence supports the

19  ALJ's determination that plaintiff's severe impairments did not meet or equal the asthma listing.

20  The ALJ's determination at step three of the sequential evaluation must be affirmed.  <u>See</u>

21  <u>Sprague</u>, 812 F.2d at 1229-30.

22  **III.  Crediting the Treating Physician's Opinions**

23         It is well-established that the medical opinion of a treating physician is entitled to

24  special weight.  <u>See</u> <u>Fair v. Bowen</u>, 885 F.2d 597, 604 (9th Cir. 1989); <u>Embrey v. Bowen</u>, 849

25  F.2d 418, 421 (9th Cir. 1988).  "As a general rule, more weight should be given to the opinion of

26  a treating source than to the opinion of doctors who do not treat the claimant."  <u>Lester</u>, 81 F.3d at

830.  "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons."  Id. (quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)).  "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing."  Id. (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).

Here, plaintiff contends that the ALJ failed to credit one line in a letter from Dr. Lo.  Plaintiff asserts that the line reflects Dr. Lo's opinion that plaintiff "most likely has occupational related C.O.P.D. on top of his asthma problem."  (Pl.'s Mot. for Summ. J. at 17 (citing tr. at 191).)  Plaintiff complains that the ALJ cited the rest of Dr. Lo's letter almost verbatim but omitted the line about the severity of plaintiff's asthma.  Plaintiff also complains that the ALJ summarized Dr. Bianchi's conversation with Dr. Lo but omitted Dr. Bianchi's report of Dr. Lo's opinion that plaintiff has "significant respiratory abnormality."  (Id. (citing tr. at 17, 190).)  Plaintiff views these omissions as a rejection of Dr. Lo's opinions without the ALJ setting forth specific, legitimate reasons for the rejection.  Plaintiff contends that the ALJ ignored Dr. Lo's opinions in order to credit the consultative opinion of Dr. Turkot and accept Dr. Turkot's inadequate functional assessment.

The letter at issue, dated November 20, 2003, is addressed to whom it may concern.  (Tr. at 191.)  The sentence upon which plaintiff's argument is based states as follows: "In my opinion, Mr. Burton most likely has occupational C.O.P.D. on top of his asthma problem."  (Id.)  Dr. Bianchi's report of his contact with Dr. Lo also includes the following sentence:  "Overall, Dr. Lo notes that client has significant respiratory abnormality but declines to opine his functional status for aforementioned reasons."  (Tr. at 190.)

The ALJ found that plaintiff has asthma and chronic obstructive pulmonary disease and that both are severe impairments.  (Tr. at 14.)  The ALJ also determined that plaintiff should be restricted to a work environment which is well ventilated, where little or no noxious

1   fumes or dusts are present.  (Tr. at 19.)  The court is unable to find that either the single

2   conclusory sentence in Dr. Lo's letter or the one sentence in Dr. Bianchi's report constitutes a

3   treating physician's opinion that was not credited.  See Meanel v. Apfel, 172 F.3d 1111, 1113-14

4   (9th Cir. 1999) (rejecting a treating physician's conclusory, minimally supported opinion); see

5   also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).   Plaintiff's argument to the

6   contrary is unpersuasive.

7   **IV.  Crediting Plaintiff's Testimony**

8           Turning to plaintiff's claim concerning the ALJ's failure to credit plaintiff's

9   testimony, the court notes that it is well-established that the determination of credibility is a

10   function of the ALJ acting on behalf of the Commissioner.  See Saelee v. Chater, 94 F.3d 520,

11   522 (9th Cir. 1996).  Indeed, questions of credibility and resolution of conflicts in the testimony

12   are functions solely of the Commissioner.  Id.; Morgan, 169 F.3d at 599.  For this reason, an

13   ALJ's assessment of credibility should, in general, be given great weight.  Nyman v. Heckler,

14   779 F.2d 528, 531 (9th Cir. 1985).

15           Nonetheless, an ALJ's rejection of a claimant's testimony must be supported by

16   specific findings.  Morgan, 169 F.3d at 599; Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir.

17   1993) (citing Miller, 770 F.2d at 848).  Once a claimant has presented objective medical

18   evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to

19   the severity of his or her symptoms merely because the testimony is not corroborated by the

20   objective medical evidence.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Reddick v.

21   Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th

22   Cir. 1997).  Rather, "'the ALJ can reject the claimant's testimony about the severity of [his or]

23   her symptoms only by offering specific, clear and convincing reasons for doing so.'"  Light, 119

24   F.3d at 792 (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)).  See also Reddick,

25   157 F.3d at 722.  In evaluating a claimant's subjective testimony regarding the severity of his or

26   her symptoms, an ALJ may consider the presence or absence of supporting objective medical

1    evidence along with other factors.  See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991);

2    see also Smolen, 80 F.3d at 1285.  Ordinary techniques of credibility evaluation may be

3    employed, and the adjudicator may take into account prior inconsistent statements or a lack of

4    candor by the witness.  See Fair, 885 F.2d at 604 n.5.

5           Here, plaintiff argues that the ALJ failed to credit plaintiff's statements as to the

6    nature and extent of his shortness of breath, fatigue, pain, and postural limitations despite

7    medical evidence of underlying impairments which could be expected to produce these

8    symptoms.  While plaintiff testified that he is totally unable to work, the ALJ made specific and

9    detailed findings in not fully crediting that testimony.  The ALJ's decision summarizes the

10   testimony given by plaintiff, discusses all the evidence in the record, and evaluates plaintiff's

11   allegations and testimony regarding his impairments at considerable length.  (See tr. at 15-21.)

12   The ALJ credits all subjective complaints to the extent the complaints are supported by evidence

13   in the record.  (Tr. at 23.)

14          The court finds that the ALJ fairly characterized the record and sufficiently stated

15   specific, clear and convincing reasons for not fully crediting plaintiff's testimony regarding his

16   pain and fatigue and their impact on his ability to work.  See Tidwell v. Apfel, 161 F.3d 599, 602

17   (9th Cir. 1998).  Therefore, plaintiff's argument to the contrary must be rejected.

18   **V.  Including All Limitations in Hypothetical**

19          Finally, the court finds plaintiff's challenge to the ALJ's hypothetical question

20   unpersuasive as well.  Plaintiff asserts that the ALJ failed to include all of plaintiff's limitations

21   in the hypothetical question posed to the vocational expert.  Plaintiff cites his need to take

22   multiple daily naps, his need to stay home and use his nebulizer three times a day during "bad

23   seasons," and his inability to keep his neck in a downward flexed position.

24          At step five of the sequential evaluation, the ALJ is required to question a

25   vocational expert in a manner that properly takes into account the limitations on the plaintiff's

26   abilities to engage in various work-related functions.  See Holohan v. Massanari, 246 F.3d 1195,

13

1208-09 (9th Cir. 2001).  "While the ALJ need not include all claimed impairments in his hypotheticals, he must make specific findings explaining his rationale for disbelieving any of the claimant's subjective complaints not included in the hypothetical."  <u>Light</u>, 119 F.3d at 793.

Here, medical evidence in the record reflects that plaintiff has a normal range of motion in his neck, can stand and walk for about four hours in an eight-hour day, and can sit without restriction, although periodic posture changes are recommended.  (Tr. at 16, 112-15.)  In "bad" times of the year, plaintiff uses his nebulizer three times a day, with each treatment taking about fifteen minutes to complete, and in "good" times of the year he uses the nebulizer once or twice every two or three weeks.  (Tr. at 248-49.)  Plaintiff gets sleepy when sitting and watching television and falls asleep often, possibly because of medication he takes.  (Tr. at 256-57.)  Plaintiff did not show that he cannot use his nebulizer on breaks and at lunch, or before and after work as well as at lunch.  Nor did plaintiff establish a medical need for naps.

For all of the reasons set forth above, the court rejects plaintiff's argument that the ALJ erred by failing to include additional limitations in the hypothetical question posed to the vocational expert.

**CONCLUSION**

Accordingly, the court HEREBY ORDERS that:

1.  Plaintiff's motion for summary judgment is denied;

2.  Defendant's cross-motion for summary judgment is granted; and

3.  The decision of the Commissioner is affirmed.

DATED: March 30, 2007.

_Dale A. Drozd_
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/burton2408.order